UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:08-CR-324-1-F
No. 5:10-CV-187-F

JOSEPH EVELYN WING,                    )
                    Movant,            )
                                       )
        v.                             )        O R D E R
                                       )
UNITED STATES OF AMERICA               )
                    Respondent.        )

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:09-CR-10-1-F
No. 5:10-CV-170-F

JOSEPH EVELYN WING,                    )
                    Movant,            )
                                       )
        v.                             )        O R D E R
                                       )
UNITED STATES OF AMERICA               )
                    Respondent.        )

This matter is before the court on the Government's Motion to Dismiss or for Summary

Judgment as to Joseph Wing's § 2255 Motion to Vacate, Set Aside or Correct his Conviction and

Sentence. Appointed counsel has filed a Response on Wing's behalf, and the matter is ripe for

disposition.

Movant, Joseph E. Wing ("Wing"), pled guilty pursuant to a Memorandum of Plea

Agreement [DE-24] to a four-count Indictment, No. 5:08-CR-324-1-F, and a one-count

Information, No. 5:09-CR-10-1-F, on January 20, 2009. The Indictment charged four counts of

mailing threatening communications, 18 U.S.C. § 876(c), and the Information charged Wing with being a felon in possession of a firearm, 18 U.S.C. § 922(g) and § 924. The Information did not specify the nature of Wing's alleged predicate conviction for the § 922(g) charge.[1] At his arraignment, Wing was advised, *inter alia*, that his guilty plea subjected him to a sentence of life imprisonment plus 40 years. Before accepting Wing's guilty plea, the undersigned questioned Wing who confirmed, under oath, that he understood the charges against him, the maximum possible penalties and the terms of his Plea Agreement.[2] He also advised the court under oath that he had received no threats or promises that induced him to plead guilty, and that he did, in fact, commit the acts as charged in the Indictment and Information.

The Indictment and the Information in effect were consolidated for sentencing, and one Presentence Report was prepared that included all five convictions. A preponderance of the evidence presented at sentencing established that Wing used the firearm charged in the Information to commit a first degree murder. *See* PSR ¶¶ 4, 5 & 9. The court adopted the credible and reliable factual findings contained in the PSR. In calculating Wing's advisory U.S. Sentencing Guideline ("USSG") range, the U.S. Probation Officer determined as to the felon-in-possession conviction that Wing used the firearm in connection with First Degree Murder, and

---

[1]    The Information contained an Allegation of Prior Convictions that, "the defendant has at least three previous convictions by any court referred to in Title 18 United States Code, Section 922(g)(1), for violent felonies, as defined in Title 18 United States Code, Section 924(e)(2)(B)." The Presentence Report ("PSR") did not recommend Armed Career Offender status under § 924(e), and the Government did not pursue it sentencing. On consideration of Wing's instant motion, the court noted that the PSR did not appear to reflect a predicate prior felony to support the § 922(g) conviction.

[2]    Among the terms of the Plea Agreement was the stipulation of the parties that, "[o]n or about January 5, 2007, the defendant, with malice aforethought, and with premeditation and deliberation, murdered Daniel Lee Ellis by knowingly and intentionally firing the weapon described in the Criminal Information into a crowd of people, hitting Ellis, and killing him. Accordingly, the cross-reference provision of the United States Sentencing Guidelines in § 2K2.1(c)(1)(B), applies, and the first-degree murder guideline in § 2A1.1 applies to this case." Memorandum of Plea Agreement at ¶ 5 (a).

2

applied the cross reference to USSG §2A1.1,[3] resulting in a base offense level of 43. Together with Wing's Criminal History score of IV, his advisory guideline range for the Criminal Information alone, would have been life imprisonment, if not for the ten-year statutory maximum. Application of the Multiple Count Adjustment pursuant to USSG § 3D1.4 resulted in a combined adjusted offense level of 43. As there were no applicable adjustments, Wing's total offense level was 43 and his criminal history category was IV, which would have resulted in an advisory guideline range of life imprisonment. Statutorily, however, the Information, and each of Counts Two, Three and Four of the Indictment were capped at a maximum of 10 years; Count One of the Indictment carried a maximum term of 5 years.

Where none of the counts of conviction individually carries an adequate statutory maximum sentence, sentences may be run consecutively in order to achieve the total appropriate punishment. *See* advisory USSG § 5G1.2(d), Application Note 1. Specifically, § 5G1.2(d) provides, "[i]f the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, the sentence on one or more of the other counts shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment." Applying USSG § 5G1.2(d), the court sentenced Wing to 60 months imprisonment on Count One, and to 120 months on *each* of Counts Two through Four of the Indictment and Count One of the Criminal Information, all to run consecutively to each other and to Count One of the Indictment, resulting in a 540-month sentence.

Consistent with the terms of his plea agreement, Wing did not file a direct appeal of his sentence. He did, however, file this timely § 2255 motion, purportedly under his reservation of rights to do so contained in the Memorandum of Plea Agreement at ¶ 2(c). Invoking his right to the effective assistance of counsel, and complaining of prosecutorial misconduct, Wing asserted

---

[3] If the defendant used or possessed any firearm in connection with the commission or attempted commission of another offense, apply § 2X1.1 in respect to that other offense.

3

the following Claims for relief under § 2255:

Claim One: Counsel failed to inform him that he was charged with the "wrong kind of gun charge," in that he is not a felon because his only predicate felonies were juvenile adjudications. He claims he therefore is "legally innocent" of the felon-in-possession charge alleged in the Information.

Claim Two: Notwithstanding a number of instances of bizarre behavior and self-mutilation, Wing never was ordered to undergo a psychological evaluation with regard to these charges. His lawyer was ineffective for failing to arrange such evaluation.

Claim Three: Trial counsel failed to object when the prosecutor referred to Wing as a "murderer" during sentencing proceedings.

Claim Four: The court improperly cross-referenced USSG § 5G1.2(d) – First Degree Murder – in calculating Wing's advisory guideline range for the felon-in-possession conviction.

Claim Five: Trial counsel was ineffective for failing to inform Wing that he should have been sentenced concurrently as to the "closely-related" counts contained in the Indictment.

Claim Six: But for the Nash County, North Carolina District Attorney's threat to try him for capital murder if he went to trial on these federal charges, and his federal trial counsel's promise that he would receive only 20-30 years if he pled guilty, Wing would not have done so but would instead have exercised his right to a trial.

Claim Seven: Wing contends he is "actually innocent" because he did not murder anyone, as revealed by evidence contained in the discovery produced by the State.

Claim Eight: Wing contends his plea of guilty was involuntary because of his mental incapacity referenced in his Claim Two.

By order dated May 24, 2010, the undersigned directed the Government to file an answer or other appropriate response "as to Claim One only," in light of Wing's challenge to the voluntariness of his guilty plea to the felon-in-possession charge of the Information. The

4

Government complied, *see* [DE-23] in 5:09-CR-10-1-F/5:10-CV-170-F, and the documents attached to that response clarified the status of Wing's prior convictions. The court thereafter directed the Government to respond as appropriate to Wing's § 2255 motion as a whole, pursuant to Rule 4, Rules Governing § 2255 Proceedings. The Government filed the instant dispositive motion and incorporated by reference its prior response [DE-23] to Claim One. Wing has responded through appointed counsel.

As the record now demonstrates, Wing's Claim One lacks a factual basis. Wing had challenged the voluntariness of the guilty plea to the Information's felon-in-possession § 922(g) charge, alleging that he was not a "felon" at the time of the alleged offense. As the Government now has documented, Wing had, indeed, been convicted of a "felony" at the time he was charged with possessing a firearm. The factual basis for Wing's argument raised in Claim One – that his prior convictions only had been juvenile adjudications and therefore, not "felonies" – is refuted by the documents attached to the Government's instant motion.

The Government is correct that Wing waived his right to challenge his conviction or sentence on appeal or collateral review, except on grounds of ineffective assistance of counsel or prosecutorial misconduct not known to him at the time he entered his guilty plea. *See* Memorandum of Plea Agreement at ¶ 2(c). Claims Four, Five and Six must be dismissed on that ground alone.

Additionally, Wing's Claims Three, Four, Six and Seven in various ways relate in to the court's determination that a preponderance of the evidence at sentencing supported a finding that Wing had killed another individual. None of those claims has merit, however, because Wing's Plea Agreement specifically provides in paragraph 5 that the USSG § 2K2.1(c)(1)(B) "cross reference" to USSG § 2A1.1 (first-degree murder guideline) would be applicable in calculating his sentence. The Plea Agreement also plainly reflects at ¶ 6 the arrangement among the Government, Wing and his attorney, and the state prosecutor that the State would not

5

pursue murder charges against Wing if he were to receive a sentence of at least 300 months imprisonment in this case. The Government's use of the word "murderer" during Wing's sentencing hearing had no effect on this court's calculation of his appropriate sentence. Although the court is aware that Wing had not been *convicted* of murder, it also is aware of the factual stipulations contained in ¶ 5(a) of the Plea Agreement and their relevance in Wing's election to plead guilty to these federal charges.

As to Claim Five, Wing is mistaken that, under the circumstances of this case, the "closely related" claims should have been grouped under the advisory Guidelines. Specifically, as this court explained in the order of May 24, 2010, all the sentences were ordered to run consecutively so as to achieve the total appropriate punishment, in light of the low individual statutory maximum sentences available. *See* USSG § 5G1.2(d). Indeed, the Plea Agreement in ¶ 5(a) expressly provides for application of the cross-reference. *See supra,* p. 2, note 2.

Furthermore, as the Government points out in its motion, Wing relinquished all rights to bring a collateral challenge based on facts of which he *was aware* at the time he entered his guilty plea. Wing has not suggested that when he pled guilty he was unaware either that his counsel had not obtained a mental evaluation of him, or that he needed one. In fact, both Wing and his attorney asked the court to impose sentence *that day,* or at least to expedite sentencing, rather than await preparation of a Presentence Report. The court declined. A suggestion now that adjudication of these offenses should have been delayed pending a psychiatric evaluation and report is belied by the record.

As to Count Eight, the court entered findings at Wing's arraignment that he was competent to enter a plea, and that his plea was voluntary. While Wing has demonstrated the ability to engage in bizarre and unhealthy behavior, nothing suggests that his decision to enter a guilty plea under the terms offered by the Government was anything but knowing and voluntary.

6

For the foregoing reasons, therefore, the Government's Motion to Dismiss or, in the Alternative, for Summary Judgment [**DE-49**] (No. 5:08-CR-324-1-F/5:10-CV-187), and [**DE-30**] (No. 5:09-CR-10-1-F/5:10-CV-170-F)], is ALLOWED. Any other pending motions are DENIED as moot.

Having denied Wing's § 2255 application for relief, I, James C. Fox, Senior United States District Judge, am of the opinion that movant, Joseph Evelyn Wing, has failed to make a substantial showing of the denial of a constitutional right, and that no reasonable jurist would find this court's assessment of Wing's constitutional claims debatable. A Certificate of Appealability, therefore, is DENIED.

SO ORDERED.

This, the 20th day of July, 2011.

James C. Fox

JAMES C. FOX
Senior United States District Judge