IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:08-cr-324-F-1

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| vs. | ) **ORDER** |
| | ) |
| JOSEPH EVELYN WING, | ) |
| Defendant. | ) |

Before the court is *pro se* Defendant's Motion for Change of Committed Name. [DE 66]. Defendant states he has converted to Islam and adopted "Abdur-Rahman As-Salafee" as his Muslim name. Defendant asks the court to (1) amend the Judgment in a Criminal Case Order [DE 35] to reflect his Muslim name and (2) order the Bureau of Prisons ("BOP") to recognize his religious name.

## I.   BACKGROUND

On January 20, 2009, Defendant pled guilty pursuant to a memorandum of plea agreement to a four-count indictment, No. 5:08-CR-324-1-F, and a one-count criminal information, No. 5:09-CR-10-1-F. The indictment charged four counts of mailing threatening communications in violation of 18 U.S.C. § 876(c), and the information charged one count of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g) and 924. On May 12, 2009, the court sentenced Defendant to 60 months' imprisonment on count one of the indictment, 120 months' imprisonment on each of counts two through four of the indictment and count one of the information, all to run consecutively, resulting in a 540-month sentence. Defendant converted to Islam and adopted a Muslim name after he began serving his sentence.

There is no claim or evidence of a legal name change.

## II. DISCUSSION

Defendant's motion implicates both his rights under the Free Exercise Clause of the First Amendment and the BOP's legitimate penological interests in maintaining continuity of a prisoner's records and facilitating the desired familiarity with its inmates. *See Ali v. Dixon*, 912 F.2d 86 (4th Cir. 1990) (discussing the accommodation of both interests).

"Prison walls do not form a barrier separating prison inmates from the protections of the Constitution." *Turner v. Safley*, 482 U.S. 78, 84 (1987). Relevant here, the Free Exercise Clause "protects an inmate's right to legal recognition of an adopted religious name." *Barrett v. Virginia*, 689 F.2d 498, 503 (4th Cir. 1982); *see Ali*, 912 F.2d at 90 (stating "several courts, including our own, have expressed approval of the addition of a prisoner's new [religious] name as a means of accommodating the prisoner's free exercise rights and the prison's interests in administrative continuity"). Accordingly, "[w]hen an inmate legally changes his name for religious purposes, the [BOP], upon notice of such a change, is required to add the new name to the prison file." *Ephraim v. Angelone*, 313 F. Supp. 2d 569, 575 (E.D. Va. 2003); *see, e.g., United States v. Baker*, 415 F.3d 1273, 1274 (11th Cir. 2005) (holding "an inmate is entitled to prospective recognition of a legal name change . . . by means of a 'dual-name policy' [but] . . . is not entitled to have documents that pre-dated his legal name change altered"); *Malik v. Brown*, 71 F.3d 724, 727 (9th Cir. 1995) ("The cases have consistently supported [that] an inmate has a First Amendment interest in using his religious name, at least in conjunction with his committed name."); *Thacker v. Dixon*, 784 F. Supp. 286, 297 (E.D.N.C. 1991) (finding use of both committed name and legal Muslim name does not violate an inmate's First Amendment rights). In this vein, the BOP's policy regarding name changes provides that "inmates may adopt name

changes in accordance with *religious affiliations* . . . [but] [i]t is the inmate's responsibility to provide [BOP] staff with *verifiable documentation of the name change* . . . ." *Id.* (emphasis added).[1]

Nevertheless, restrictions on an inmate's constitutional rights – including maintaining an inmate's records under the name listed on the judgment – are at times necessary to serve "legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974); *Bell v. Wolfish*, 441 U.S. 520, 546 (1979) (stating "mutual accommodation between institutional needs and objectives" and constitutional rights must exist). The manner in which the BOP organizes and categorizes its records is unquestionably "reasonably related to a legitimate penological objective"[2] – in particular, the "efficient system of identification and administration of prisoners within its custody." *Fawaad v. Jones*, 81 F.3d 1084, 1087 (11th Cir. 1996). As such, "the mere fact that correctional authorities maintain a prisoner's records in the name he used when convicted implicates no constitutional right." *Barrett*, 689 F.2d at 503 (stating "how prison officials choose to organize their records is quintessentially an administrative matter in which the courts should not intervene"); *see Bowen v. Roy*, 476 U.S. 693, 700 (1986) ("The Free Exercise Clause affords an individual protection from certain forms of governmental compulsion; it does not afford an individual a right to dictate the conduct of the

---

[1] The BOP organizes and stores inmate information in SENTRY – an information system that "includes information relating to the care, classification, subsistence, protection, discipline, and programs of federal inmates." Privacy Impact Assessment for the SENTRY Inmate Management System (July 2, 2012) (defining SENTRY as "a real-time information system consisting of various applications for processing sensitive but unclassified . . . inmate information and for property management"), *available at* https://www.bop.gov/foia/sentry.pdf (last visited Mar. 21, 2017).

Pursuant to BOP policy, SENTRY recognizes inmates by their "committed, legal and true names." *See* Program Statement 5800.15, Correctional Systems Manual, Ch. 4 § 402(d) (Sept. 23, 2016), *available at* https://www.bop.gov/policy/progstat/5800_015_CN-01.pdf (last visited Mar. 21, 2017). "The name entered on the [judgment and commitment] is considered the committed name to be used by the inmate, as well as the [BOP]." The committed name can "only be changed by an order from the Federal sentencing court." *Id.*

[2] *Turner*, 482 U.S. at 87.

Government's internal procedures.").

Here, Defendant alleges the adoption of an "Islamic name" but provides no "verifiable documentation of the name change" in accordance with BOP policy. "[I]n states where inmates are allowed to change names legally, prisons are generally required to recognize only legally changed names." *Malik*, 71 F.3d at 727; *accord United States v. Hamrick*, 3:90-cr-12, 2013 U.S. Dist. LEXIS 63095, at *5 (E.D. Va. May 1, 2013); *Green v. Beck*, 2012 U.S. Dist. LEXIS 67514, at *8 (E.D.N.C. May 15, 2012), *aff'd in relevant part*, 539 Fed. App'x 78 (4th Cir. 2013). The Bureau of Prisons currently houses Defendant at ADX Florence in Florence, Colorado. While Colorado law allows petitions for name changes, it prohibits consideration of a legal name change for any petitioner "previously convicted of a felony" subject to an exception not applicable here.³ Colo. Rev. Stat. § 13-15-101(2)(b)(2016). There is no indication that Defendant qualifies for a legal name change under Colorado law.⁴ Based on this court's research, three courts in this circuit have considered the issue presented here. *See United States v. Orr*, 3:98-cr-322-GCM-1, 2016 U.S. Dist. LEXIS 170790 (W.D.N.C. Dec. 9, 2016); *United States v. Bowman*, 5:01-CR-33-RLV, 2013 U.S. Dist. LEXIS 82652 (W.D.N.C. June 12, 2013); *Hamrick*, 2013 U.S. Dist. LEXIS 63095. As here, the inmates were incarcerated in Colorado.

In *Hamrick*, the court denied defendant's request to change his committed name to his religious name in the judgment. *Hamrick*, 2013 U.S. Dist. LEXIS 63095, *8. The court acknowledged defendant's "religious certificates bearing his assumed name," but observed "these

---

³ *See* Colo. Rev. Stat. § 13-15-101(3).

⁴ Colorado's categorical prohibition on name changes by prisoners is substantively identical to the Virginia statute that the Fourth Circuit in *Barrett* held as unconstitutional. *See Barrett*, 680 F.2d at 503 (holding Virginia's "categorical refusal" to legally recognize religious names adopted by incarcerated persons was not "reasonably and substantially justified by considerations of prison discipline and order) (citing former version of Va. Code Ann. § 8.01-217).

documents reflect[ed] no legal name change by any governmental entity." *Id.* at *4. In fact, the court found defendant "failed to demonstrate that he qualifies for a legal name change under Colorado law." *Id.* at *5-6. The court also noted BOP's name change policy and defendant's failure to provide verifiable documentation in accordance with that policy.

In *Bowman* – the case relied on by Defendant - the court denied an inmate's request to replace his committed name with his religious name. *Bowman*, 2013 U.S. Dist. LEXIS 82652, at *9. After considering BOP's name change policy and expressing unfamiliarity with Colorado law, the court remarked that "[it] may have the ability to request that the BOP recognize [d]efendant's new Islamic name, [but] it is not at all clear that this federal court, even under its inherent authority, can legally effect a name change." *Id.* at *8. Nevertheless, the court held that "to the extent [d]efendant requests that this [c]ourt (and the BOP) recognize *both* his committed name and his newly adopted Islamic name by adding (a/k/a "Hamzah Abdullah Ibn-Dawud As-Salafi") in parentheses under his committed name, [d]efendant's motion is granted." *Id.* at *9-10.

In *Orr*, an inmate asked the court to change defendant's "post-committed name" despite providing no "verifiable documentation of the name change." *Orr*, 2016 U.S. Dist. LEXIS 170790, at *1. Apparently BOP's refusal to acknowledge defendant's religious name served as the impetus for his request. *Id.* Citing *Bowman*, the *Orr* court explained it lacked "the authority to effect a legal name change." *Id.* at *2. Contrary to *Bowman*, however, the court held that without proof of a name change "under the applicable state laws governing changes of names," it lacked authority to "order the BOP to recognize [d]efendant's name change." *Id.*

Based on the above, the court agrees with the holding in *Orr*. Defendant has no constitutional right to retroactively change the name under which he was convicted. *See Baker*, 415 F.3d at 1274. Moreover, the court lacks authority to order the BOP to recognize Defendant's

religious name. There is no indication that Defendant legally changed his name or complied with BOP procedure for establishing dual name recognition.[5]

For the foregoing reasons, Defendant's motion [DE 66] is DENIED.

SO ORDERED.

This the 23rd day of March, 2017.

*[signature: James C. Fox]*

**JAMES C. FOX**
Senior United States District Judge

---

[5] To the extent Colorado law prohibits inmates from using its statutory procedure for effecting a legal name change, the instant motion is not the appropriate vehicle to seek redress of a First Amendment violation. *See Hamrick*, 2013 U.S. Dist. LEXIS 63095, at *7 n.4 (explaining an inmate "must file a civil complaint in the district of his incarceration").